UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | | |
|---|---|---|
| MICHAEL D. BURT | * | DOCKET NO.  07-0401 |
| VERSUS | * | JUDGE JAMES |
| MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION | * | MAGISTRATE JUDGE HAYES |

## REPORT AND RECOMMENDATION

Before the court is claimant's petition for review of the Commissioner of Social Security's denial of social security disability benefits.  The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).  For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice.

## Background & Procedural History

Michael D. Burt filed the instant applications for Disability Insurance Benefits and Supplemental Security Income payments on March 29, 2004.  (Tr. 77-79, 218, 246).  He alleged disability since December 31, 2001, due to stroke, back injury, arthritis, short term memory loss, and a bullet lodged in his back.  (Tr. 77, 84).  The claims were denied at the initial stage of the administrative process. (Tr. 59, 61-64, ).  Thereafter, Burt requested and received a September 21, 2005, hearing and a June 14, 2006, supplemental hearing before an Administrative Law Judge ("ALJ").  (Tr.243-300).  However, in a July 17, 2006, written decision, the ALJ determined that Burt was not disabled under the Social Security Act, finding at Step Four of the

sequential evaluation process that he was able to return to past relevant work as an apartment manager and cashier/checker.  (Tr. 14-23).  Burt appealed the adverse decision to the Appeals Council.  On December 29, 2006, the Appeals Council denied his request for review, and thus the ALJ's decision became the final decision of the Commissioner.  (Tr. 5-7).

On February 26, 2007, Burt sought review before this court.  He alleges the following errors:

(1)     the ALJ failed to consider the impact of plaintiff's incontinence on his ability to perform sustained work activities; and

(2)     the Appeals Council erred in failing to find that the new evidence provided a basis for changing the ALJ's decision.

## Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards.  *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).  Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed.  *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards.  *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. at 401. While substantial evidence lies somewhere between a scintilla and a preponderance, substantial evidence clearly requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).  Conversely, a finding of no substantial evidence is proper when no credible

medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).  The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Secretary.  *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

## Determination of Disability

Pursuant to the Social Security Act (the "Act"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability.  *See* 42 U.S.C. § 423(a)(1)(D).  The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).   Based on a claimant's age, education, and work experience, the Act utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work.  *See* 42 U.S.C. § 423(d)(2)(A).  Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the Act.  *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The steps are as follows,

(1)     An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2)     An individual who does not have a "severe impairment" of the requisite

duration will not be found to be disabled.

(3)   An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4)   If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

(5)   If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

See, Boyd v. Apfel,  239 F.3d 698, 704 -705 (5th Cir. 2001);  20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled.  Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987).  When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated.  Villa v. Sullivan, 895 F.2d 1019, 1022 (5th Cir. 1990).  If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis.  Lovelace v. Bowen, 813 F.2d 55, 58 (5th Cir. 1987).

### Analysis

The ALJ determined at Step Two of the sequential evaluation process that Burt suffered from severe impairments of "history of a cerebrovascular accident, chronic back pain secondary to history of prior back injury, osteoarthritis, and hypertension."  (Tr. 17, 23).  However, the impairments were not severe enough to meet or medically equal any of the impairments listed in the Category of Impairments in Appendix 1 to Subpart P, Social Security Regulations No. 4.  Id.

The ALJ next determined that Burt retained the  residual functional capacity to perform

the exertional demands of light work, reduced by no more than occasional balancing, stooping,

crouching, kneeling, crawling and climbing (but unable to climb ladders and scaffolding) and

moderate limitations in his ability to maintain attention and concentration for extended periods

secondary to chronic back pain.  (Tr. 21, 23).[1]

At the outset, the court observes that there is substantial record evidence to support the

ALJ's residual functional capacity assessment.  On, or about June 17, 2004, David Hebert, M.D.

examined Burt at the request of Disability Determination Services.  (Tr. 157-159).[2]  Burt reported

that he became tired if he walked more than a quarter of a mile.  *Id*.  However, he had no

difficulty driving his car or doing other activities.  *Id*.  Burt reported that he would have difficulty

lifting more than 25 pounds.  *Id*.  He complained that his back hurt if he lifted more than 25

pounds or sat more than four hours per day.  *Id*.  He reported no nausea, vomiting, diarrhea, or

abdominal pain.  *Id*.[3]  All joints exhibited a full range of motion, and he had no appreciable loss

of motor strength in the left arm and leg despite complaints of moderate weakness.  *Id*.  There

---

[1]  Light work entails:

> . . . lifting no more than 20 pounds at a time with frequent lifting or
> carrying of objects weighing up to 10 pounds.  Even though the
> weight lifted may be very little, a job is in this category when it
> requires a good deal of walking or standing, or when it involves
> sitting most of the time with some pushing and pulling of arm or
> leg controls.  To be considered capable of performing a full or wide
> range of light work, you must have the ability to do substantially
> all of these activities.  If someone can do light work, we determine
> that he or she can also do sedentary work, unless there are
> additional limiting factors such as loss of fine dexterity or inability
> to sit for long periods of time.

20 C.F.R. § 404.1567(b).

[2]  Hebert specializes in internal medicine.  (Tr. 169).

[3]  If Burt's incontinence was as severe as he now contends, it seems that he would have
mentioned it to Dr. Hebert.

was no evidence of depression, anxiety, or significant memory loss.  *Id*.  X-rays showed some disc space narrowing and moderate osteophyte formation.  *Id*.  Hebert diagnosed mild osteoarthritis and generalized mild degenerative disc disease of the lumbar spine which were not significantly affecting function.  *Id*.  He further diagnosed arterial hypertension which was well-controlled.  *Id*.  Hebert opined that Burt could perform routine walking, sitting, standing, carrying, and lifting in an eight hour day.  *Id*.  He limited lifting to less than 20 lbs., but no other restrictions.  *Id*.[4]

Relying upon Dr. Hebert's examination, non-examining agency physician, Gerald Dzurik, M.D., completed a physical residual functional capacity assessment on June 17, 2004.  (Tr. 160-167).  He determined that Burt could occasionally lift 20 pounds, frequently lift 10 pounds, and stand, walk, and sit about six hours in an eight hour day.  *Id*.  He assigned no other limitations.  *Id*.  On December 16, 2005, the ALJ propounded interrogatories to Frank Barnes, M.D., who diagnosed severe lumbar osteoarthrosis and arteriosclerosis, with history of stroke.  (Tr. 192-196).[5]  Barnes also completed a Medical Source Statement of Ability to do Work-Related Activities (Physical), but found no limitations.  (Tr. 197-200).[6]

On January 16, 2006, Eugene Taylor, M.D., examined Burt at the request of Disability Determination Services.  (Tr. 202-204).[7]  Burt reported that he could lift approximately ten

---

[4]  However, Burt reported a lifting threshold of 25 pounds.  *Id*.

[5]  Dr. Barnes' specialty is orthopedic surgery.  (Tr. 201).

[6]  "An ALJ may properly rely on a non-examining physician's assessment when . . . those findings are based upon a careful evaluation of the medical evidence and do not contradict those of the examining physician." *Carrier v. Sullivan*, 944 F.2d 243, 246 (5th Cir.1991)(quoting, *Villa v. Sullivan,* 895 F.2d 1019,1024 (5th Cir. 1990)).

[7]  Dr. Taylor specializes in orthopedic surgery.  (Tr. 206).

pounds.  *Id*.  He further stated that he had an irritable bowel syndrome for which he took

medication.  *Id*.  Burt reported that he smoked half a pack of cigarettes per day, and used a cane

for balance when ambulating.  *Id*.  He had a negative stretch test bilaterally in both lower

extremities.  *Id*.  There was no evidence of muscle weakness or paralysis in the lower extremities.

 *Id*.  He did, however, exhibit slight muscle weakness on the left side of the body.  *Id*.  X-rays

showed an old compression fracture at T12, and small osteophytes.  *Id*.  The examination

revealed no evidence of specific nerve root irritation or impairment.  *Id*.  Taylor reviewed

accompanying medical records which also failed to demonstrate any significant physical

disabilities or limitations.  *Id*.  Taylor opined that Burt was limited to occasional postural

activities, but assigned no other limitations.[8]

Plaintiff primarily argues that the ALJ failed to consider the impact of his "overactive

bladder," his uncontrollable bowel problems, and his need to have immediate access to the

---

[8] *See*, Medical Source Statement of Ability to do Work-Related Activities (Physical) form.  (Tr. 205-208).  During a supplemental hearing, Drs. Taylor and Barnes acknowledged that Burt may have some lifting limitations, but they were not inconsistent with the exertional capacity for light work.  (Tr. 277-300).
In July 2005, plaintiff's treating physician, Jawad Bhatti, M.D., completed a "[Form] to Request Medical Opinions" wherein he opined that Burt was unable to work secondary to chronic back pain.  (Tr. 187).  He further noted that Burt could stand and sit for only 15 minutes, lift nothing, occasionally bend, frequently manipulate, and frequently needed to elevate his legs during an eight hour work day.  (Tr. 187).  However, Dr. Bhatti completed the form after approximately one consultation with Burt, and the timing coincided with counsel enrolling on behalf of Burt.  (*See*, Tr. 39-40).  The ALJ took pains to discount Dr. Bhatti's opinion, and his decision to favor the opinions of the consultative physician and specialist is well-supported.  (Tr. 20-21); *Bullock v. Astrue*, Docket No. 07-30344, 2007 WL 4180549 (5th Cir. 11/27/2007) (unpubl.) (ALJ may credit findings of examining physician over treating physician's opinion) (citing *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000); *see also*, *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990) (opinion of a specialist is generally accorded greater weight than that of a non-specialist).

bathroom.  In contrast, the ALJ specifically noted Burt's loss of bladder and bowel control, but observed that the etiology was unclear, and that no resulting limitations had been assigned by the medical experts.  (Tr. 19).  Indeed, medical progress notes during the relevant period often indicated that Burt expressed no complaints regarding urinary or bowel incontinence.  (*See e.g.*, Tr. 143, 147, 181-182, 210-211).

On December 20, 2005, however, a physician examined Burt for possible malabsorption syndrome versus Whipples Disease.  (Tr. 214).  Burt reported explosive bowel movements not related to food.  *Id*.  He also experienced diarrhea not preceded by abdominal cramps.  *Id*.  The physician's impression was change in bowel habits versus irritable bowel syndrome.  *Id*.  The hospital scheduled a surgery clinic appointment to evaluate Burt's change in bowel habits.  *Id*. However, a March 20, 2006, colonoscopy revealed normal sphincter tone, and otherwise proved inconclusive.  (Tr. 223-224).[9]

Dr. Bhatti's notes from May 8, 2006, indicate that Burt experienced urgency in using the bathroom, and that he had difficulty holding his bowels secondary to his stroke.  (Tr. 216). Nevertheless, Dr. Bhatti made no diagnosis regarding these difficulties and instead ordered an MRI to evaluate for neurogenic bowels.  *Id*.  Notes from June 12, 2006, suggest that Burt's treatment included daily Metamucil use.  (Tr. 237).

The ALJ's determination that plaintiff's bladder and bowel incontinence did not significantly impact his residual functional capacity is substantially supported by the lack of any definitive diagnosis in the record (at the time of his decision) and the absence of any physician-recognized limitations associated with the condition.  In fact, plaintiff testified at the September

---

[9]  The physician also removed a hyperplastic polyp.  (Tr. 222).

21, 2005, hearing that his bowel problems caused him to use the bathroom three to six times per day. (Tr. 255-256). Assuming that a worker spends only half of his waking time at work, then plaintiff would only need to use the bathroom one to three times per work day. These self-described limitations due to bowel incontinence, even if credited, would not affect Burt's residual functional capacity because the full range of work contemplates three breaks during the workday. *See*, SSR 96-9p.[10]

Plaintiff further contends that new evidence obtained after the ALJ's decision and submitted in the first instance to the Appeals Council, compels this court to remand the matter for further consideration. This "new" evidence constitutes part of the instant record – provided that it is new, material and related to the period before the ALJ's decision. *See, Higginbotham v. Barnhart* 405 F.3d 332 (5th Cir. 2005); 20 C.F.R. § 404.970(b).[11] Here, however, the undersigned finds that the evidence is not "material"; *i.e.*, relevant, probative, and likely to have changed the outcome of the Commissioner's determination. *See, Pierre v. Sullivan,* 884 F.2d 799, 803 (5th Cir. 1989).[12] The new evidence consists largely of diagnostic test results and office

---

[10] At the hearing, the vocational expert opined that a worker would be unable to maintain employment only if he needed work breaks "*over and above those normally authorized by employers.*" (Tr. 274).

[11] *Higginbotham* cited *Perez v. Chater*, and *Wilkins v. Sec'y Dept. of Health Human Servs.* as support for its finding that post-ALJ evidence is to be considered part of the record. *See, Higginbotham*, 405 F.3d at fn. 3 (*citing inter alia, Perez v. Chater*, 77 F.3d 41, 44–45 (2d Cir.1996) and *Wilkins v. Sec'y, Dept. of Health Human Servs.*, 953 F.2d 93, 96 (4th Cir.1991) (*en banc*)). Both *Perez* and *Wilkins* require that the subsequent evidence be new, material and relevant to the pre-ALJ decisional period. *Perez, supra*; *Wilkins, supra* (citing, 20 C.F.R. § 404.970(b)).

[12] Despite the presence of new evidence in *Higginbotham*, the panel on subsequent appeal upheld the district court's decision to affirm the Commissioner's denial of benefits. *Higginbotham v. Barnhart*, 163 Fed. Appx. 279, 2006 WL 166284 (5th Cir. 1/10/2006) (unpubl.) ("*Higginbotham II*"). The panel discounted a diagnosis of disability by claimant's treating

visit notes.  For example, notes from August 23, 2006, state that Burt complained of bowel incontinence, but that his urinary leakage had improved.  (Tr. 235).  Notes from August 29, 2006, indicate that Burt had a weak stream.  (Tr. 236).  The examiner diagnosed a neurogenic bladder and prescribed Cardura.  *Id*.[13]  Of course, an impairment that can be remedied or controlled by medication or therapy is not disabling.  *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988).

With regard to plaintiff's back problems, x-rays of the cervical spine taken on August 9, 2006, confirmed degenerative changes at all levels.  (Tr. 225).  On the same day, an electromyographic/nerve conduction study revealed an absence of a distal response to the left peroneal (probably due to extensor digitorum brevis atrophy), but was otherwise unremarkable.  (Tr. 228-229).  An August 16, 2006, MRI of the thoracic spine indicated degenerative changes and left paracentral disc protrusion at T5-6.  (Tr. 230).  An MRI of the cervical spine revealed disc bulging at C5-6 and C6-7.  (Tr. 230).

Plaintiff contends that this new evidence provides objective support for his back problems.  However, clinic notes from August 23, 2006, state that the neurology clinic staff and residents did not believe that Burt's MRI warranted referral to the neurosurgeon, and instead, he should return to the orthopedic clinic on an as needed basis.  (Tr. 231).  Further notes that day remark that there was no good evidence of acute or pathogenic cord problems, and that Burt

---

physician as conclusory and unsupported. *Id*.

[13]  "Doxazosin (Cardura, Cardura XL) is used in men to treat the symptoms of an enlarged prostate (benign prostatic hyperplasia or BPH), which include difficulty urinating (hesitation, dribbling, weak stream, and incomplete bladder emptying), painful urination, and urinary frequency and urgency."
http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a693045.html

suffered from an old thoracic myelopathy and old stroke.  (Tr. 235).[14]  Finally, Dr. Bhatti's

progress notes from August 14, 2006, document that Burt's back pain was "very well controlled"

with medication.  (Tr. 240).  Moreover, his motor strength remained 5/5 in all extremities and

sensory examination was intact.  *Id*.

In sum, as in *Higginbotham II*, the new evidence here simply does not undermine the

record to the point that the ALJ's decision is no longer sufficiently supported.  *Higginbotham II,*

*supra*.  For the reasons stated above, the undersigned finds that the Commissioner's decision is

supported by substantial evidence and is free of legal error.[15]  Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision to deny benefits be

**AFFIRMED**, and that this civil action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have

**ten (10) business days** from service of this Report and Recommendation to file specific, written

objections with the Clerk of Court.  A party may respond to another party's objections within **ten**

**(10) business days** after being served with a copy thereof.  A courtesy copy of any objection or

response or request for extension of time shall be furnished to the District Judge at the time of

filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED**

**FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS**

---

[14]  The note also stated that surgical intervention should be considered.  *Id*.  However, the
clinic's appreciation of the seriousness of the condition was belied by instructions to schedule
Burt's next appointment in four to six months.  *Id*.

[15]  Plaintiff did not allege any errors with the remaining steps of the sequential evaluation
process.

**REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 11th day of February 2008.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE